Bouldin, J.,
delivered the opinion of the court.
Dr. if. M. Osborne, late of the city of Petersburg, died in that city in the year 1869, having duly made his last will, and leaving the appellant, his widow, him surviving, but no children. By the first clause of the will the testator gave to his wife Sarah M. Osborne (the appellant) all his property for life. The second clause is as follows:
“ I give to her, in fee, her Olover-ITill stock, four thousand dollars of State stock, registered bonds, nine shares of Richmond and Petersburg rail-road stock,’and twelve *393 shares of Southern rail-road stock, to do with as she pleases. '
hi. M. Osborne, jr., a nephew of the testator, was pointed and qualified as his executor; and a question arose between the executor and the appellant, as to what passed to her under these words, in the second clause of the will:
“I give to her, in fee, her Clover-Hill stock.” To settle this question alone, the suit was brought by the appellant, in the Hustings court of the city of Petersburg, from the final decree in which this appeal was taken.
The facts, so far as pertinent to the question, are briefly as follows:
In the year 1857 the appellant, then Sarah M. Maitland, intermarried with the testator, N. M. Osborne. At the date of the marriage, she was possessed, in her own right, of the following stocks, viz:
Clover-Hill rail-road company, 50 shares; Richmond & Petersburg rail-road company, 9 shares; Southern railroad company 7 shares. After the marriage, and in the same year, (1857,) these shares were all regularly transferred to the said N. M. Osborne, and thereafter stood in his name: and in 1858, several thousand dollars of Virginia State bonds were purchased by Robert L. Maitland, trustee of appellant, with her money, and by her direction were transferred to the testator, N. M. Osborne. Whilst these stocks were standing thus in the name of Dr. Osborne, the number of shares held by him in the Southern rail-road company was increased by purchase from seven to twelve shares, five being added. In this state of things, there were two successive stock dividends, (as they are called,) declared by the Southern rail-road company, not out of profits realized, but simply by increasing the number of shares in the hands of the share *394 holder, so as to make the increased number of shares represent precisely the same capital which was before re-by the original number. It was in no sense a dividend af profits, but merely a subdivision of capital s^oc^ describing the same capital by a larger number of shares. Under this process, the interest in the Southern rail-road company, held by Ur. Osborne, was described by eighteen shares instead of twelve; and by a precisely similar process his interest in the Clover-Hill rail-road company came to be described by seventy shares, instead of fifty; a nominal increase of twenty shares; but, as we have said, only a subdivision of shares, without increase of property, the increased number of shares representing precisely the same capital stock, neither more nor less. It further appears that when this increase was made, separate scrip for the twenty new shares was made out in the name of Dr. Osborne, and sent to him, and that he subsequently returned that and the scrip for the original fifty shares, and took one certificate for the whole number of seventy shares.
Such, was the condition of these stocks when Dr. Osborne made his will, and when he died. He had eighteen shares Southern railroad stock, which included the seven shares acquired by his wife, the five shares purchased of Spencer, and the increased shares on both. He had the nine shares Hichmond and Petersburg stock acquired by his wife, and he had the Clover Plill stock — that is to say, seventy shares Clover Hill stock acquired by his marriage with her. He had no children, and after giving his wife a life estate in all his property he gave her in fee, among other things, “'her Clover Hill stock,” “ to do with as she pleases; ” and the question was, What did he mean to give her by those words ? The Hustings court held that he intended only the original fifty shares; and *395 gave her those only, and decreed also that she should pay the costs of the suit. From this decree Mrs. Osborne has appealed to 'this court.
The question before us is simply this, What stock did Dr. Osborne intend to describe by the words used in his last will ? The words themselves are plain and unambiguous. After having given to his wife all his property for life, in the first clause of his will, he goes on in the 2d as follows: “I give her in fee her Clover-Hill stock” (and other things) “to do with as she pleases.” How it is perfectly clear, that something was intended to be given to the wife in fee, by this language; that that something was “Clover-Hill stock;” and that there was something present to the mind of the testator which made it appropriate, in his opinion, that the “Clover-Hill stock” given to her should be designated “her Clover-Hill stock.” If, then, we can find the subjechmatter thus described and plainly given to the wife; if we can find Clover-Hill stock under the control of the testator, which, at the date of his will, might be reasonably discribed by him as “her Clover-Hill stock,” to all such stock Mrs. Osborne is clearly entitled. The word “her” as used by the testator in describing the stock given to his wife, was not intended to affirm that the property was in the wife; to imply that what he was giving was already hers. He knew the contrary; and the solemn duty he was then performing in giving her the stock, shows that the word was not used in that sense. There was, therefore, some fact present to the mind of the testator which induced the description. 'Whether there be such stock, is purely a question of fact, de hors the will. The bequest is plain. The question is: Is there a subject to answer the description ? And in solving this question, precedent and authority are of but little service: it must depend solely on the facts of this - case. *396 And in making an application of these facts to ... the bequest under consideration, we need only to bear mind the following principle, extracted by Judge Kedfield from the cases, viz: “It is never required that all particulars of name or description of person or thing should be precisely accurate, in order to the validity of the provisions of the will. It is always sufficient that the court, after learning the surrounding facts and circumstances, should be able, loith reasonable certainly, to declare the intent of the testator.” Let us then for a moment occupy the stand-point of the testator at the date of his will. He doubtless felt, for he died soon after, that his earthly career was drawing to a close, and that it was necessary and proper for him to make suitable provision for those having meritorious claims upon him. He had a wife, but no children nor descendants. His wife was naturally and in fact the prime object of his bounty; and we find that by the first clause of his will he gives her all his property for life. But he remembered, as it was right and proper that he should remember, that he then held valuable interests wholly acquired through her; interests which, as there were no children of the marriage, would by the law of distributions, pass, as far as they could be traced in kind, to her absolutely, in the event of his intestacy. What so natural and proper as that he should remember these interests at such a moment, and that he should act in relation to them at least as liberally to her as the law would in case of intestacy? We find from the will that he did so act. He acquired by her several thousand dollars Virginia State bonds, the exact amount not proved; the bill says six thousand, the answer several thousand. He gave her in fee four thousand dollars State stock, registered bonds. He held at his death nine shares Bichmond and Petersburg railroad stock, acquired through his wife. He *397 gave her all of them. He had eighteen shares Southern railroad stock, seven original shares, acquired by his wife, and five by purchase. These twelve shares were increased in number by subdivision of capital stock, or increase of shares as it is called, to eighteen, as above mentioned. Without nicely calculating the proportionate increase of the number acquired by his wife, he gave her twelve shares, being rather in excess of her due proportion ; and finally, to come to the clause under consideration, (not, however, in the order in which they are mentioned in the will,) he had standing in his name seventy shares Clover Hill railroad stock, acquired, as we have seen, through his wife; fifty original shares acquired on marriage, and twenty additional, added by subdivision of capital stock, or increase of shares, as aforesaid. Separate scrip, as we have seen, was first issued to him for the twenty shares; but he returned his scrip, as well fcr the original fifty as for the additional twenty shares, and took one certificate for the whole number of seventy shares. He held them unchanged until his death, having at the date of his will, and at his death, no other “ Clover Hill stock” than these seventy shares thus acquired through his wife; and he says in his will, “I give to her in fee her Clover Hill stock.” What “ Clover Hill stock?” Beyond all question the seventy shares Clover Hill railroad stock acquired by the testator jure mariti, and which by the law would be his wife’s — her’s were he to die intestate. He intended to do with this stock precisely what he did with the other interests similarly acquired ; which we have seen were given to her in fee.
Heading this will, then, by the light of these surrounding facts and circumstances, we think we may declare, not merely with “reasonable certainty,” but almost with absolute “certainty,” that it was the intention of the tes *398 tator, by the bequest under consideration, to give to the appellant the seventy shares of Clover-Hill rail-road stock, by him through his wife as aforesaid, and standing in his name at his death. The decree of the IiustinSrS court is, therefore, erroneous, and must be reversed, with costs to the appellant; and a decree must be entered here in accordance with this opinion, aud certified to the Hustings court.
The decree was as follows :
This day came again the parties by counsel, and the court having maturely considered the transcript of the record and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the Hustings court of Petersburg erred in holding that the appellant, under the testator’s will, wTas entitled to only fifty shares of Clover-ITill railroad stock instead of seventy shares, as claimed in her bill. It is therefore decreed and ordered that the said decree of the Hustings court of Petersburg of the 18th of November 1870, be reversed and annulled, and that the appellee, out of the assets of his testator in his hands to be administered, do pay to the appellant her costs by her about her appeal to this court expended.
And this court, proceeding to enter such decree as. should have been entered by said Hustings court, doth decree and order, that Nathaniel M. Osborne, as executor of Nathaniel M. Osborne, deceased, do transfer in proper form and deliver to Sarah M. Osborne, the complainant in said court, as her absolute property, seventy shares of the stock of the Clover-Hill Railroad Company, owned by the testator, Nathaniel Osborne, deceased, at his death; and that said Nathaniel M. Osborne, as executor as aforesaid, out of the assets of his tes *399 tator in his hands to be administered, do pay to said Sarah M. Osborne her costs in said Hustings court expended. Which is ordered to be certified.
Decree reversed.